******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

JAMES ARRICO *v.* BOARD OF EDUCATION OF
THE CITY OF STAMFORD ET AL.
(AC 44409)
(AC 44488)

Elgo, Moll and Pellegrino, Js.

*Syllabus*

The defendants, an employer and its third-party administrator appealed to
this court from the decision of the Compensation Review Board, which
reversed in part the Workers' Compensation Commissioner's decision
approving a form 36 filed by the defendants. During the course of his
employment as a custodian, the plaintiff sustained a compensable injury
and entered into two voluntary agreements with his employer. The
plaintiff thereafter sustained another injury and two voluntary agree-
ments were approved with respect to that injury. Subsequently, the
defendants filed a form 36 seeking to discontinue or to reduce the
plaintiff's workers' compensation benefits, asserting that the plaintiff
had a work capacity and had reached maximum medical improvement.
After formal hearings on the form 36 and on the plaintiff's entitlement to
total disability benefits pursuant to statute (§ 31-307), the commissioner
approved the form 36. The plaintiff appealed to the board, claiming inter
alia, that the commissioner incorrectly concluded that further medical
care of his compensable injuries would be palliative when that issue
was not noticed for or litigated during the formal hearings. The plaintiff
further claimed that the commissioner applied an improper standard in
determining that his current disability was the result of preexisting,
noncompensable injuries and, thus, not compensable under § 31-307.
The board concluded that substantial evidence supported the commis-
sioner's decision approving the form 36. The board, however, stated
that it was persuaded that the manner in which the commissioner
addressed this evidence impaired the plaintiff's right to a fair hearing.
Accordingly, the board vacated the majority of the commissioner's con-
clusions and remanded the matter for further proceedings. The board
subsequently denied the plaintiff's motion for articulation or reconsider-
ation in which he argued that a de novo trial before a different commis-
sioner was required on remand, and the plaintiff filed a separate appeal
to this court. *Held*:

1. The defendants could not prevail on their claims that the board improperly
reversed in part the commissioner's decision approving their form 36:

a. The defendants' claim that the board misconstrued the commissioner's
decision regarding the plaintiff's claim for § 31-307 benefits and in
remanding the attendant issues for further proceedings was unavailing;
the defendants' contention that the commissioner found that the plaintiff
had a work capacity was belied by the commissioner's decision because,
although the commissioner noted that certain physicians had opined
that the plaintiff had a work capacity, the commissioner neither indicated
that she deemed those opinions to be credible nor made a finding that
the plaintiff had a work capacity, the board could not have affirmed the
commissioner's decision on the basis of a finding that the commissioner
never made, and the board correctly concluded that the commissioner
determined that the plaintiff remained totally disabled as a result of
preexisting, noncompensable injuries.

b. The board did not err in vacating the commissioner's conclusions as
to the issue of further medical care for the plaintiff's work-related injuries
and remanding that issue for further proceedings on the ground that the
parties did not receive notice and an opportunity to present argument
and evidence on that issue: the defendants conceded that the question
of whether the plaintiff required further medical care was not at issue
during the formal hearings; moreover, contrary to the defendant's con-
tention, this court did not construe the commissioner's determination
regarding further medical care as reinforcing her finding that the plaintiff
had reached maximum medical improvement, rather, this determination
implicated the issue of whether further medical care was reasonable or
necessary, which was not at issue before the commissioner; furthermore,

if the parties agree that the issue of further medical care is not germane to the proceedings and decline to litigate it, they may alert the commissioner in order to remove the issue from consideration on remand.

2. The plaintiff could not prevail on his claim that the board improperly denied his motion for articulation or reconsideration in violation of statute (§ 51-183c): the plaintiff's claim that the board violated § 51-183c by denying his request for an order that the issues that the board remanded be tried de novo before a different commissioner was untenable because § 51-183c applies only to judges, § 51-183c does not apply in the workers' compensation forum, and this court declined to extend the policy underpinning § 51-183c to workers' compensation proceedings.

Argued November 18, 2021—officially released April 26, 2022

*Procedural History*

Appeal from the decision of the Workers' Compensation Commissioner for the Seventh District finding, inter alia, that the plaintiff had reached maximum medical improvement with respect to his claim for certain workers' compensation benefits, brought to the Compensation Review Board, which reversed in part the commissioner's decision and remanded the case for further proceedings; thereafter, the board denied the plaintiff's motion for articulation or reconsideration, and the plaintiff and the defendants filed separate appeals to this court. *Affirmed*.

*Daniel A. Benjamin*, for the appellant in Docket No. AC 44488 and for the appellee in Docket No. AC 44409 (plaintiff).

*Scott Wilson Williams*, for the appellants in Docket No. AC 44409 and for the appellees in Docket No. AC 44488 (defendants).

*Opinion*

MOLL, J. In this workers' compensation dispute, the plaintiff, James Arrico, and the defendants, the Board of Education of the City of Stamford (city) and PMA Management Corporation of New England,[1] each appeal from separate decisions of the Compensation Review Board (board).[2] In Docket No. AC 44409, the defendants appeal from the decision of the board reversing in part the decision of the Workers' Compensation Commissioner for the Seventh District (commissioner) of the Workers' Compensation Commission approving a form 36[3] that the defendants filed.[4] The board vacated the majority of the commissioner's conclusions in her decision approving the form 36 and remanded the matter to the commissioner for further proceedings on several issues. On appeal, the defendants claim that the board (1) misconstrued the commissioner's decision as including a finding that the plaintiff was totally disabled as a result of preexisting, noncompensable injuries, (2) failed to affirm the commissioner's decision on the basis of her purported finding, as supported by sufficient evidence, that the plaintiff had a work capacity, and (3) misconstrued the commissioner's conclusion that further medical care of the plaintiff's compensable injuries was palliative. In Docket No. AC 44488, the plaintiff appeals from the decision of the board denying his motion for articulation or reconsideration vis--vis its ruling on the commissioner's decision approving the form 36. On appeal, the plaintiff claims that the board improperly denied his request for an order that the matter be remanded to a different commissioner for a de novo trial. We affirm the decisions of the board.

The following facts, which are not in dispute, and procedural history are relevant to our resolution of these appeals. At all relevant times, the plaintiff was employed by the city as a custodian. On July 21, 2008, during the course of his employment, the plaintiff sustained a compensable back injury (2008 injury). Two voluntary agreements[5] were approved in 2016, which established a 16 percent permanent partial disability rating as to the plaintiff's back with a September 30, 2016 maximum medical improvement date.[6] On February 10, 2017, during the course of his employment, the plaintiff sustained another compensable back injury when he fractured his sacrum while lifting a table (2017 injury). Two voluntary agreements were approved in August, 2017, in relation to the 2017 injury.

On February 28, 2018, the defendants filed a form 36 seeking to discontinue or to reduce the plaintiff's workers' compensation benefits. Relying on a report dated February 20, 2018, by Stuart Belkin, an orthopedic surgeon who had examined the plaintiff, the defendants asserted that the plaintiff had a work capacity and had reached maximum medical improvement with an additional 5 percent permanent partial disability rating as

to his back. On March 5, 2018, the plaintiff filed an objection to the form 36. On September 7, 2018, following an informal hearing, the form 36 was approved.

Formal hearings on the form 36 were held on December 12, 2018, and January 29, 2019.[7] The commissioner (1) heard testimony from the plaintiff and his wife and (2) admitted exhibits, including medical records, into evidence. During the January 29, 2019 formal hearing, in response to a request by the plaintiff's counsel, the commissioner stated that the notice issued in relation to the formal hearings listed two disputed issues: (1) the form 36 filed by the defendants pursuant to General Statutes § 31-296; and (2) the plaintiff's entitlement to total disability benefits pursuant to General Statutes § 31-307.[8]

On August 20, 2019, the commissioner issued a de novo ruling approving the form 36. As summarized by the board, the commissioner set forth the following relevant facts and overview of the evidence. "[The commissioner] noted that the [plaintiff] had sustained two different back injuries; the first occurred on July 21, 2008, at the L4 level and the second injury on February 10, 2017, when [he] fractured his sacrum lifting a table. . . . The commissioner also noted the numerous ailments unrelated to his work injury the [plaintiff] suffered from during the period between [the 2008 injury and the 2017 injury], which included colitis, essential hypertension, seizures and epilepsy, and spinal stenosis. [The commissioner] noted that one of the [plaintiff's] treaters, Vincent R. Carlesi . . . had diagnosed him in 2008 with a history of chronic low back pain which radiates into his buttocks and down his left lower extremity. An MRI in 2008 noted [among other ailments] 'degenerative disc narrowing at the L4-L5 level . . . .' The commissioner noted the [plaintiff] chose not to undergo surgery at that time and opted for pain management. . . .

"Carlesi examined the [plaintiff] on March 7, 2017, and diagnosed him with lumbar radiculopathy and lumbar spinal stenosis. Carlesi noted the [plaintiff's] medical history included colitis, ulcerative colitis, disc disease, degenerative joint disease, and that he is currently an 'every day smoker.' . . . Carlesi also noted that the [plaintiff's] prior treatment had included the use of a number of steroids. . . .

"The [defendants] had their expert, [Belkin], examine the [plaintiff] on February 20, 2018. Belkin found the [plaintiff] had reached maximum medical improvement . . . with a 5 percent permanent partial disability of the lumbar spine, independent of any previous impairment. . . .

"On March 12, 2018, Carlesi sent a letter to [the plaintiff's] counsel stating that the [plaintiff's] 2017 injury had 'exacerbated his underlying pain and that he has

been incapable of returning to work due to the severity of his pain. He is unable to ambulate without a cane and he has severe pain [from his] back radiating [into] both lower extremities. [His] pain worsens with activity, [and there is a] significant decrease in [his] ability to lift, bend, and carry anything at this point in time. [He] is unable to perform most of his activities of daily living and pretty much rests in a recliner or in a [bed]. He lacks physical endurance and frequently awakens from sleep due to pain.' . . .

"Carlesi deemed the [plaintiff] totally disabled from all work activities as a result of the progressive degenerative disc disease, lumbar spinal stenosis, and sacral insufficiency fractures. He did agree the [plaintiff] was at [maximum medical improvement] and assigned an 11 percent permanent partial disability rating of the lumbar spine. On March 20, 2018, Carlesi further assessed the [plaintiff] as to his pain level and medication use, and noted the [plaintiff] was using a cane and was unable to return to work. Carlesi's notes also indicate the [plaintiff] suffered from a number of digestive system ailments.

"A commissioner's examination was performed by Michael F. Karnasiewicz . . . on June 28, 2018.[9] Karnasiewicz opined that the [plaintiff] had reached [maximum medical improvement] from the 2017 injury and had sustained a 5 percent additional permanent disability to his sacral spine from the incident, and that the [plaintiff] had a sedentary work capacity. The commissioner noted these other opinions from [Karnasiewicz]:

"a. The [plaintiff's] underlying spinal stenosis was probably aggravated by the injury of February 10, 2017, and is causing the radiculopathy the [plaintiff] is experiencing. . . .

"b. The [plaintiff's] need for treatment is multifactorial in that both the [2008 injury] and the [2017 injury] were 'substantial factors' in the production of the [plaintiff's] need for treatment. . . .

"c. Other factors complicating the [plaintiff's] current inability to work are ulcerative colitis, acid reflux and seizure disorder. He also has poor concentration skills and a slowed thought process. He is an 'easy' bruiser and bleeder and has unspecified difficulty with his immune system. He uses a cane for ambulation, his ankle reflexes are absent bilaterally with diminished sensation bilaterally in both of his feet. . . .

"d. Between the [plaintiff's] first injury in 2008 and his second injury in 2017, his diagnostics reveal a steady worsening of his stenotic condition. In addition, an EMG study with [another physician] shows multiple level radiculopathy consistent with spinal stenosis.

"e. [Karnasiewicz] gives the [plaintiff] a sedentary work capacity and recommends that the [plaintiff] be reevaluated by [Scott Simon, a neurosurgeon] for

decompressive surgery in the treatment of his bilateral pain. . . .

"The [plaintiff] continued to treat for his ailments with Carlesi who [i]n July . . . 2018, examined him and noted he 'continues to experience chronic lower back pain, sacral pain and radicular pain in both lower extremities associated numbness, tingling and pins and needles in his feet.' . . . Carlesi said the [plaintiff] was a surgical candidate for either a lumbar laminectomy and decompression surgery to treat the spinal stenosis or a spinal cord stimulator trial for pain relief. He also opined that the [plaintiff] was still disabled. . . .

"Belkin was deposed on December 5, 2018, and discussed his prior February, 2018 examination and his review of the [the plaintiff's] medical records. He noted the [plaintiff] had a bilateral sacral fracture on February 10, 2017, and needed no additional treatment as of February, 2018. He deemed the [plaintiff] at [maximum medical improvement] with a 5 percent permanent partial disability rating in addition to any previous rating. He opined that the [plaintiff] could return to work as a custodian based solely on his lumbar spine condition 'but that any current disability at the time [he] examined [the plaintiff] was as a result of [the plaintiff's] [preexisting] chronic spinal problems,' which he testified were 'diffuse degenerative disc disease and spinal stenosis of the lumbar spine.' . . . He agreed with Karnasiewicz' opinions as to the [plaintiff's] level of permanency and having a sedentary work capacity. He was more equivocal on [an opinion by Simon] that the [plaintiff] was disabled from work, deeming it 'possible.' Belkin opined the [plaintiff's] comorbidities are not germane to his orthopedic examination and he did not unequivocally agree that the [plaintiff's] comorbidities and medication regime would necessarily preclude any form of work status for the [plaintiff]. He did not believe the [plaintiff's] spinal stenosis had necessarily worsened and opined the [plaintiff's] sacral fractures should have healed."[10] (Citations omitted; footnote added; footnote omitted.)

On the basis of the record, the commissioner concluded that the plaintiff had "reached maximum medical improvement on his low back with an additional 5 percent due on his sacrum. The combined permanent partial disability rating from the 2008 [injury] and the 2017 [injury] is 21 percent to the low back."

The commissioner made the following additional conclusions. The commissioner rejected (1) Carlesi's opinion that the 2017 injury "had aggravated the plaintiff's underlying pain" and (2) Karnasiewicz' opinion that the plaintiff's "underlying spinal stenosis was 'probably aggravated' by the [2017 injury] and is causing the radiculopathy the [plaintiff] is experiencing and the need for treatment of [the] same." The commissioner rejected those opinions because (1) in 2008, Carlesi had reported

that the plaintiff had a " 'history of chronic back pain' " that radiated down his body " 'with associated numbness and weakness,' " which " 'precluded him from working and performing his daily activities,' " (2) a 2008 MRI revealed, among other ailments suffered by the plaintiff, " 'degenerative disc narrowing,' " (3) the plaintiff was a daily smoker, and (4) the plaintiff had declined to undergo surgery in 2008, opting to pursue conservative care and accepting a 16 percent permanent partial disability rating as to his back.

With regard to the plaintiff's decision to reject surgery, the commissioner stated that, "[f]or eleven years, the [plaintiff] has turned down the surgical option to remediate his back condition, despite recommendations from his treating physicians to do this at an earlier point in time. Now, due to the passage of time and the [plaintiff's] various non-work related [comorbidities], some of which are progressively degenerative in nature . . . he is no longer a surgical candidate. The [plaintiff] is entitled to turn down recommended surgery and opt for conservative or palliative care, however, he must do so with the understanding that the [Workers' Compensation Act, General Statutes § 31-275 et seq.] was not designed to cause the [defendants] to pay for palliative treatment in perpetuity, nor does it require the [defendants] to pay indemnity benefits while the [plaintiff] refuses reasonable and medically necessary surgery to his back and/or while other, non-work related conditions are interfering with the [plaintiff's] ability to participate in curative medical treatment for his work-related low back injuries."

The commissioner then concluded that Belkin, Karnasiewicz, and Carlesi all had determined that the plaintiff had reached maximum medical improvement with respect to his back, which "signal[ed] to the parties and to the commissioner that there is no further 'curative' treatment available to the [plaintiff]." The commissioner further concluded that the plaintiff had been out of work for a "protracted period of time" and that "[t]herapy designed to keep the employee at work or to return him to work is curative," whereas "[t]herapy that does not return a claimant to work may be deemed palliative and therefore not reasonable and necessary medical care." (Internal quotation marks omitted.) Finally, the commissioner concluded that, "[t]o the extent that the [plaintiff] remains totally disabled, it is due to the various non-work related [comorbidities] and the treatment for [the] same. Further treatment on the [plaintiff's] [work related] injuries to the low back is palliative."

On September 3, 2019, the plaintiff filed a motion to correct and a motion for reconsideration, both of which the commissioner denied. On September 10, 2019, the plaintiff filed a petition for review with the board.

On November 17, 2020, the board reversed in part

the commissioner's decision approving the form 36. At the outset of its decision, the board concluded that there was substantial evidence supporting the commissioner's decision approving the form 36. Nevertheless, the board was "persuaded by the [plaintiff] . . . that the manner in which the commissioner addressed this evidence was sufficiently unorthodox as to impair his right to a fair hearing based on established standards in this forum." Specifically, the plaintiff claimed, inter alia, that the commissioner improperly (1) concluded that further medical care of his compensable injuries would be palliative when that issue was neither noticed for, nor litigated, during the formal hearings and (2) failed to apply the proper standard in determining that his current disability was the result of preexisting, noncompensable injuries and, thus, not compensable under § 31-307.

The board first addressed the commissioner's conclusions that further medical care of the plaintiff's compensable injuries was palliative, which the board construed as implicating the question of whether further medical care was reasonable or necessary pursuant to General Statutes § 31-294d.[11] The board concluded that further medical care "was not an issue noticed for consideration at the formal hearing[s]. [The board does] not find the commissioner clearly presented this issue as a matter for consideration when she commenced the formal hearing[s]." Observing that the question of whether medical care satisfies the "reasonable or necessary" standard set forth in § 31-294d is a question of fact, the board concluded that due process required the parties to be afforded an opportunity to present argument and evidence on that issue. Additionally, the board rejected an argument by the defendants that the commissioner's finding that the plaintiff had reached maximum medical improvement vis-à-vis the 2017 injury necessitated a determination that further medical care was palliative, particularly as the defendants had cited no authority to support their argument. Accordingly, the board vacated the commissioner's conclusions as to further medical care[12] and remanded the issue of "whether further medical care for the [plaintiff] is reasonable or necessary" to the commissioner for further proceedings.

The board next considered whether the commissioner had applied the proper standard in determining that the plaintiff's disability was the consequence of preexisting, noncompensable injuries and, therefore, not compensable under § 31-307. First, the board concluded that the commissioner's ruling was predicated on "conjecture, speculation or surmise." (Internal quotation marks omitted.) The board observed that, in rejecting Karnasiewicz' opinion that the 2017 injury had "probably aggravated" the plaintiff's underlying spinal stenosis and was causing his radiculopathy, the commissioner relied on Carlesi's opinion, rendered in 2008,

that the plaintiff was suffering from chronic back ailments. Although the board remarked that it had "frequently affirmed a trial commissioner who found a treating physician or a respondent's examiner more persuasive than a commissioner's examiner," it stated that the commissioners in such cases had (1) relied on medical examinations contemporaneous with the compensable injuries at issue and (2) explained in detail why other medical examiners were more credible or persuasive than the commissioner's examiner. In contrast, the board noted, the commissioner did not assess the relative credibility or persuasiveness of the medical examiners in the present case. The board continued: "Moreover, the rationale for [the commissioner's] decision is based on an old examination [by Carlesi], the failure of the [plaintiff] to seek surgery, and the lapse of time . . . . Had the commissioner cited a medical witness who stated this point, [the board] would find the ruling sustainable. The ruling does not cite such evidence, however."[13] (Citation omitted.)

The board then explained that, in situations where a claimant suffers from both a compensable and a noncompensable injury, the claimant must demonstrate that his or her compensable injury "was a substantial factor in the claimed disability." (Internal quotation marks omitted.) The board cited decisions in which trial commissioners had resolved similar claims, stating that "[i]n all of those cases [the board] could ascertain the manner in which the trial commissioners reached their conclusions, which was by weighing the probative value of conflicting contemporaneous opinions." The board concluded that the commissioner improperly failed to identify "the specific expert witness or witnesses who offered recent testimony supportive of the result in this case. In the absence of the commissioner stating this specifically in the text of the ruling, [the board] cannot, as an appellate panel, sustain the conclusion[s] reached [in the commissioner's decision]." Accordingly, the board vacated the commissioner's conclusions concerning the plaintiff's claim for § 31-307 benefits[14] and remanded "the issues of whether the [plaintiff] is totally disabled [and] whether the [plaintiff's] disability was caused by a compensable injury" to the commissioner for further proceedings. The board affirmed the commissioner's decision only insofar as she concluded that the plaintiff had reached maximum medical improvement with a combined 21 percent permanent partial disability rating as to his back, which the parties did not contest. Thereafter, the defendants appealed from the decision of the board (AC 44409).

On November 25, 2020, the plaintiff filed a motion for articulation or reconsideration. The plaintiff asserted that the board had concluded that the facts found by the commissioner were incorrect and lacked a sufficient evidentiary foundation, such that a de novo trial was required before a different commissioner on remand.

Accordingly, the plaintiff requested that the board issue an order to that effect. On December 2, 2020, the defendants filed a response arguing that any additional formal hearings on remand should be held by the commissioner.

On December 23, 2020, the board denied the plaintiff's motion for articulation or reconsideration. In doing so, the board stated that, in its November 17, 2020 decision, it had "remand[ed] the [commissioner's decision] back to the . . . commissioner for findings consistent with the appropriate standard of causation . . . ." The board then reviewed this court's opinion in *Fantasia* v. *Milford Fastening Systems*, 86 Conn. App. 270, 860 A.2d 779 (2004), cert. denied, 272 Conn. 919, 866 A.2d 1286 (2005), which the plaintiff had cited in support of his motion, and deemed it to be distinguishable. In addition, the board noted that, following *Fantasia*, it had "often ordered remands of decisions back to the original trial commissioners with direction to rule based on the appropriate legal standards. . . . [The board] find[s] no compelling reason not to do so likewise in this case." (Citation omitted.)

The board also cited the precept of administrative economy in denying the plaintiff's motion, stating that it had "vacated various conclusions from the commissioner's [decision approving the form 36] as either not having been litigated between the parties or having been based on the application of an erroneous standard of law. The issues which were litigated have already involved the submission of a great deal of testimony and documentary evidence and [the board] believe[s] that a de novo hearing would result in substantial delay and redundancy. Permitting the . . . commissioner familiar with the record to rule on this record serves the purpose of administrative economy." Thereafter, the plaintiff appealed from the board's denial of his motion (AC 44488).

I

AC 44409

In AC 44409, the defendants appeal from the board's November 17, 2020 decision reversing in part the commissioner's decision approving their form 36 and remanding the matter for further proceedings as to the issues of total disability and further medical care. The defendants raise three distinct claims on appeal, two of which are interrelated. First, the defendants assert that the board (1) misconstrued the commissioner's decision to include a finding that the plaintiff was totally disabled as a result of preexisting, noncompensable injuries and (2) failed to affirm the commissioner's decision on the basis of her purported finding that the plaintiff had a work capacity, which the defendants maintain was supported by sufficient evidence. Second, the defendants contend that the board misconstrued the commis-

sioner's conclusion that further medical care of the plaintiff's compensable injuries was palliative. These claims are unavailing.

"The standard of review in workers' compensation appeals is well established. When the decision of a commissioner is appealed to the board, the board is obligated to hear the appeal on the record of the hearing before the commissioner and not to retry the facts. . . . The commissioner has the power and duty, as the trier of fact, to determine the facts. . . . The conclusions drawn by [the commissioner] from the facts found must stand unless they result from an incorrect application of the law to the subordinate facts or from an inference illegally or unreasonably drawn from them. . . .

"[O]n review of the commissioner's findings, the [board] does not retry the facts nor hear evidence. It considers no evidence other than that certified to it by the commissioner, and then for the limited purpose of determining whether or not the finding should be corrected, or whether there was any evidence to support in law the conclusions reached. It cannot review the conclusions of the commissioner when these depend upon the weight of the evidence and the credibility of witnesses. . . . Our scope of review of the actions of the board is similarly limited. . . . The role of this court is to determine whether the . . . [board's] decision results from an incorrect application of the law to the subordinate facts or from an inference illegally or unreasonably drawn from them." (Citation omitted; internal quotation marks omitted.) *Ayna* v. *Graebel/CT Movers, Inc.*, 133 Conn. App. 65, 69–70, 33 A.3d 832, cert. denied, 304 Conn. 905, 38 A.3d 1201 (2012).

A

The defendants first claim that the board, in vacating the commissioner's conclusions made in connection with her rejection of the plaintiff's claim for § 31-307 benefits and in remanding the total disability issues for further proceedings, misconstrued the commissioner's decision vis--vis her conclusion that, "[t]o the extent that the [plaintiff] remains totally disabled, it is due to the various non-work related [comorbidities] and the treatment for [the] same." The defendants assert that the commissioner found that the plaintiff had a work capacity and that there was sufficient evidence in the record supporting that purported finding, such that the board should have affirmed the commissioner's decision as to the same. The defendants further maintain that the commissioner did not find that the plaintiff was totally disabled because of his non-work related comorbidities, instead positing that the commissioner's statements regarding the plaintiff's disability constituted "extraneous language, or dicta . . . ." We disagree.

First, the defendants' contention that the commis-

sioner found that the plaintiff had a work capacity is belied by the commissioner's decision. Although the commissioner, in summarizing the evidence in the record, noted that certain physicians had opined that the plaintiff had a work capacity, the commissioner neither indicated that she deemed those opinions to be credible nor made a finding, express or implied, that the plaintiff had a work capacity. The board could not have affirmed the commissioner's decision on the basis of a finding that the commissioner never made. Thus, whether the record contained sufficient evidence to support a finding that the plaintiff had a work capacity is of no moment.

Second, we agree with the board that the commissioner made a determination that the plaintiff remained totally disabled as a result of preexisting, noncompensable injuries. This determination was neither extraneous nor stated in dicta as surmised by the defendants. One of the issues before the commissioner was whether the plaintiff was entitled to benefits pursuant to § 31-307. "[A] worker is entitled to total disability payments pursuant to . . . § 31-307 only when his injury results in a total incapacity to work, which [our Supreme Court has] defined as the inability of the employee, because of his injuries, to work at his customary calling or at any other occupation which he might reasonably follow." (Internal quotation marks omitted.) *Bode* v. *Connecticut Mason Contractors, The Learning Corridor*, 130 Conn. App. 672, 679–80, 25 A.3d 687, cert. denied, 302 Conn. 942, 29 A.3d 467 (2011). Whether the plaintiff was totally disabled and, if so, the cause of his total disability, were questions for the commissioner to resolve. The commissioner addressed these questions in her decision, albeit improperly, as determined by the board.

In sum, we reject the defendants' claim that the board committed error in vacating the commissioner's conclusions regarding the plaintiff's claim for § 31-307 benefits and in remanding the attendant issues for further proceedings.

B

The defendants next claim that the board, in vacating the commissioner's conclusions regarding further medical care and in remanding that issue for further proceedings, misconstrued the commissioner's determination that "[f]urther treatment on the [plaintiff's] [work related] injuries to [his] low back is palliative." The defendants concede that the question of whether the plaintiff required further medical care was not at issue during the formal hearings; however, they contend that the commissioner's determination regarding further medical care was made to support her finding that the plaintiff had reached maximum medical improvement as to the 2017 injury. In addition, the defendants maintain that, even if the board properly vacated the commis-

sioner's conclusions as to further medical care, the board improperly remanded that issue for further proceedings. We are not persuaded.

General Statutes § 31-294d (a) (1) provides in relevant part that "[t]he employer, as soon as the employer has knowledge of an injury, shall provide a competent physician, surgeon or advanced practice registered nurse to attend the injured employee and, in addition, shall furnish any medical and surgical aid or hospital and nursing service, including medical rehabilitation services and prescription drugs, as the physician, or advanced practice registered nurse surgeon deems *reasonable or necessary. . . .*" (Emphasis added.) " 'Reasonable or necessary medical care is that which is curative or remedial. Curative or remedial care is that which seeks to repair the damage to health caused by the job even if not enough health is restored to enable the employee to return to work. Any therapy designed to keep the employee at work or to return him to work is curative. Similarly, any therapy designed to eliminate pain so that the employee can work is curative. Finally, any therapy which is life prolonging is curative.' *Bowen* v. *Stanadyne, Inc.*, No. 232, CRB-1-83 (June 19, 1984)." *Sellers* v. *Sellers Garage, Inc.*, 155 Conn. App. 635, 641 n.4, 110 A.3d 521 (2015). In contrast, "therapy that does not return a claimant to work may be deemed palliative and therefore not reasonable [or] necessary medical care." *Jodlowski* v. *Stanley Works*, No. 5609, CRB 6-10-11 (November 16, 2011).

Mindful of this context, we turn to the defendants' contention that the commissioner's further medical care determination merely supported her finding that the plaintiff had reached maximum medical improvement as to the 2017 injury. This argument is unavailing. The defendants do not cite any authority, and we are aware of none, underpinning the proposition that further medical care of a compensable injury with respect to which a claimant has reached maximum medical improvement is palliative per se. In fact, the board has issued decisions that undermine that notion. See, e.g., *DeFelippi* v. *Wal-Mart Stores, Inc.*, No. 4349, CRB 5-01-1 (January 15, 2002) (rejecting argument that claimant's treatment was unnecessary and palliative after claimant had reached maximum medical improvement); *Flyer* v. *Barrieau Moving & Storage*, No. 3985, CRB 1-99-3 (April 18, 2000) (treatment was reasonable or necessary following claimant reaching maximum medical improvement); see also *Liebel* v. *Stratford*, No. 5070, CRB 4-06-3 (May 17, 2007) ("[o]nce a claimant has reached maximum medical improvement, there is *often* a valid ground to ask whether a physician's course of treatment is 'reasonable [or] necessary' within the meaning of § 31-294d" (emphasis added)). Thus, we do not construe the commissioner's further medical care determination as reinforcing her finding that the plaintiff had reached maximum medical improvement;

rather, it implicated the issue of whether further medical care was reasonable or necessary pursuant to § 31-294d, which, as the board concluded and as the defendants concede, was not at issue before the commissioner. Accordingly, we conclude that the board did not err in vacating the commissioner's conclusions as to the issue of further medical care on the ground that the parties did not receive notice and an opportunity to present argument and evidence on that issue.

The defendants further assert that, even if vacating the commissioner's conclusions as to further medical care was proper, the board should not have remanded the issue for further proceedings because (1) further medical care is not a current issue between the parties, (2) no request for medical treatment has been denied, and (3) the plaintiff is not precluded from seeking authorization for further medical care. Under the circumstances of this case, we perceive no harm in the remand order. Should both parties agree that the issue of further medical care is not germane to the proceedings and decline to litigate it, they may alert the commissioner of the same in order to remove the issue from consideration on remand.[15]

In sum, we reject the defendants' claim that the board committed error in vacating the commissioner's conclusions regarding the issue of further medical care and in remanding that issue for further proceedings.

II

AC 44488

In AC 44488, the plaintiff appeals from the board's denial of his motion for articulation or reconsideration. The plaintiff contends that the board violated General Statutes § 51-183c in denying his request for an order that the issues remanded by the board in its November 17, 2020 decision be tried de novo before a different commissioner. We disagree.

"Whether a case should be remanded, and the scope of that remand, presents questions to be determined by the . . . board in the exercise of its sound discretion." (Internal quotation marks omitted.) *Fantasia* v. *Milford Fastening Systems*, supra, 86 Conn. App. 278. In the present case, however, our resolution of the plaintiff's claim requires us to interpret § 51-183c, which invokes our plenary review. *Chase Home Finance, LLC* v. *Scroggin*, 194 Conn. App. 843, 851, 222 A.3d 1025 (2019). "The principles that govern statutory construction are well established. When construing a statute, [o]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In other words, we seek to determine, in a reasoned manner, the meaning of the statutory language as applied to the facts of [the] case, including the question of whether the language actually does apply. . . . In seeking to determine that meaning, General Statutes § 1-2z directs us

first to consider the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered. . . . When a statute is not plain and unambiguous, we also look for interpretive guidance to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and [common-law] principles governing the same general subject matter . . . .'' (Internal quotation marks omitted.) Id., 851–52.

We first turn to the text of § 51-183c, which appears in chapter 882 of the General Statutes governing the Superior Court and provides: ''No judge of any court who tried a case without a jury in which a new trial is granted, or in which the judgment is reversed by the Supreme Court, may again try the case. No judge of any court who presided over any jury trial, either in a civil or criminal case, in which a new trial is granted, may again preside at the trial of the case.''

In light of the plain language of § 51-183c, the plaintiff's argument that the board violated § 51-183c by declining to remand the matter to a different commissioner for a de novo trial is untenable. As our Supreme Court has expressly recognized, ''§ 51-183c, by its plain terms, applies only to judges.'' *State* v. *AFSCME, Council 4, Local 1565*, 249 Conn. 474, 480, 732 A.2d 762 (1999). Moreover, ''[o]ur Supreme Court, as well as this court, have previously held that § 51-183c applies exclusively to 'trials' and not to other types of adversarial proceedings.'' *Chase Home Finance, LLC* v. *Scroggin*, supra, 194 Conn. App. 852. Put simply, § 51-183c has no applicability in the workers' compensation forum.[16] Insofar as the plaintiff invites this court to extend the policy underpinning § 51-183c to workers' compensation proceedings, we decline to do so. ''We consistently have acknowledged that the [Workers' Compensation Act, General Statutes § 31-275 et seq.] is an intricate and comprehensive statutory scheme. . . . The complex nature of the workers' compensation system requires that policy determinations should be left to the legislature, not the judiciary.'' (Internal quotation marks omitted.) *Salerno* v. *Lowe's Home Improvement Center*, 198 Conn. App. 879, 884, 235 A.3d 537 (2020); see also, e.g., *State* v. *AFSCME, Council 4, Local 1565*, supra, 480 (declining to extend ''legislative policy embodied in . . . § 51-183c'' to arbitration proceedings); *Board of Education* v. *East Haven Education Assn.*, 66 Conn. App. 202, 215–16, 784 A.2d 958 (2001) (same).

The plaintiff relies on *Fantasia* v. *Milford Fastening Systems*, supra, 86 Conn. App. 270, to support his claim

that the board committed error in failing to remand the matter to a different commissioner for a de novo trial. In *Fantasia*, a workers' compensation commissioner awarded a claimant temporary partial disability benefits but denied the claimant's request for temporary total disability benefits. Id., 275. On appeal, the board concluded that the commissioner's decision contained inconsistent findings because the commissioner credited a physician's opinion that the claimant was temporarily totally disabled but failed to award the claimant temporary total disability benefits, and remanded the matter to the original commissioner for an articulation. Id., 276. On remand, the commissioner articulated that he had awarded the claimant temporary total disability benefits. Id. The board later affirmed the articulation. Id., 277.

On appeal following the board's decision affirming the articulation, this court concluded that (1) the board properly exercised its discretion, pursuant to its statutory authority, to remand the matter to the commissioner for an articulation, (2) the board improperly accepted the commissioner's articulation because the commissioner, rather than issuing an articulation in compliance with the board's remand order, made a new finding and entered a new award for benefits, and (3) the board should have remanded the matter to a different commissioner for a formal hearing on the issue of whether the claimant was entitled to temporary total disability benefits. Id., 278–89. As to the third point, this court determined that (1) "the board's statutory authority over appeals [pursuant to General Statutes § 31-301 (c)[17]] from decisions of commissioners includes the authority to remand a case for a new hearing before a different commissioner" and, (2) "when inconsistent decisions by a trial commissioner would put the board in the untenable position of retrying the facts, which it may not do, the board may exercise its authority to remand the case for a new hearing before a different commissioner." (Footnote added.) Id., 288–89. This court further stated that "remanding th[e] case to the same commissioner for a third decision would appear to be a mere exercise in going through the motions [and] the claimant would not emerge from these proceedings with the feeling that he has had a meaningful day in court. That is a result we seek to avoid." (Internal quotation marks omitted.) Id., 289.

The plaintiff's reliance on *Fantasia* is misplaced. Although *Fantasia* recognized that the board has statutory authority to remand a matter to a different commissioner for a new hearing, *Fantasia* does not compel such a remand under the circumstances of this case. In *Fantasia*, this court concluded that remanding the case for a new hearing before a different commissioner was the proper remedy when the original commissioner had issued inconsistent decisions that had left the board "in the untenable position of retrying the facts, which

it may not do . . . ." Id. In the present case, the board did not remand the matter to the commissioner to issue an articulation, which would have created the possibility of the commissioner issuing two inconsistent decisions; rather, the board reversed in part the commissioner's decision approving the form 36 and remanded the matter to the commissioner to resolve several issues. Because the portion of the commissioner's decision reversed by the board is no longer effective, there is no risk of the board being placed "in the untenable position of retrying the facts" at this juncture. Id. In addition, because this is the first remand to the commissioner ordered by the board, it would be premature to deem the board's remand to the commissioner to be "a mere exercise in going through the motions" and to anticipate "the claimant . . . not emerg[ing] from these proceedings with the feeling that he has had a meaningful day in court." (Internal quotation marks omitted.) Id. In short, *Fantasia* does not advance the plaintiff's claim.

The plaintiff also cites *Cantoni* v. *Xerox Corp.*, 251 Conn. 153, 740 A.2d 796 (1999), in support of his claim. In *Cantoni*, an employer and its insurer appealed from the board's decision reversing a workers' compensation commissioner's dismissal of a workers' compensation claim with an attendant remand for a new hearing before a different commissioner. Id., 155 and n.1. This court, in an unpublished order, dismissed the appeal for lack of a final judgment. Id. After granting certiorari, our Supreme Court affirmed this court's judgment; id., 154; concluding that the board's decision "direct[ing] a rehearing to be held before a commissioner other than the one who originally heard the case does not raise a colorable claim of jurisdiction and, therefore, is not an appealable final judgment." Id., 168.

In affirming this court's judgment dismissing the appeal in *Cantoni*, our Supreme Court rejected an argument by the employer and its insurer that the board needed to have express statutory authority to remand the matter to a different commissioner. Id., 166–67. Our Supreme Court stated that, "[i]n light of the broad authority conferred upon the . . . board by the terms of § 31-301 (c), we are not persuaded that the legislature intended to impose unstated limitations on the . . . board's discretion to order appropriately adjudicated new hearings. Such an unstated limitation would be difficult to reconcile with the provisions of . . . § 51-183c . . . . Given the legislature's expressed preference that retrials not take place before the same judge who previously tried the case, we decline to conclude, without any supporting statutory evidence, that the legislature intended, as a jurisdictional matter, to preclude, in workers' compensation cases, the very practice that it endorsed in civil and criminal cases." Id. Notably, our Supreme Court did not state that § 51-183c applied so as to require a remand to a different commissioner;

instead, it emphasized the absence of statutory authority governing workers' compensation proceedings that precluded such a remand order. Id. Moreover, in later rejecting a separate argument raised by the employer and its insurer, our Supreme Court commented that "administrative convenience might often counsel in favor of . . . a remand [to the original commissioner] . . . ."[18] Id., 167. Accordingly, *Cantoni* does not support the plaintiff's claim.[19]

In sum, we reject the plaintiff's claim that the board improperly denied his motion for articulation or reconsideration, in which he requested an order that the issues remanded by the board in its November 17, 2020 decision be tried de novo before a different commissioner.

The decisions of the Compensation Review Board are affirmed.

In this opinion the other judges concurred.

[1] PMA Management Corporation of New England is a third-party administrator for the city.

[2] The two appeals, although not consolidated, were heard together at oral argument before this court pursuant to an order from this court.

[3] "'A [f]orm 36 is a notice to the compensation commissioner and the [plaintiff] of the intention of the employer and its insurer to discontinue [or reduce] compensation payments. The filing of this notice and its approval by the commissioner are required by statute in order properly to discontinue [or reduce] payments.' . . . *Brinson* v. *Finlay Bros. Printing Co.*, 77 Conn. App. 319, 320 n.1, 823 A.2d 1223 (2003); General Statutes § 31-296 (a)." *Rivera* v. *Patient Care of Connecticut*, 188 Conn. App. 203, 204 n.1, 204 A.3d 761 (2019).

[4] We note that General Statutes § 31-275d (a) (1), effective as of October 1, 2021, provides in relevant part that "[w]herever the words 'workers' compensation commissioner', 'compensation commissioner' or 'commissioner' are used to denote a workers' compensation commissioner in [several enumerated] sections of the general statutes, [including sections contained in the Workers' Compensation Act, § 31-275 et seq.] the words 'administrative law judge' shall be substituted in lieu thereof . . . ."

As all events underlying this appeal occurred prior to October 1, 2021, we will refer to the workers' compensation commissioner who approved the defendants' form 36 in this matter as the commissioner, and all statutory references herein are to the 2021 revision of the statutes.

[5] See General Statutes § 31-296 (a), which provides in relevant part: "If an employer and an injured employee . . . reach an agreement in regard to compensation, such agreement shall be submitted in writing to the commissioner by the employer with a statement of the time, place and nature of the injury upon which it is based; and, if such commissioner finds such agreement to conform to the provisions of this chapter in every regard, the commissioner shall so approve it. A copy of the agreement, with a statement of the commissioner's approval, shall be delivered to each of the parties and thereafter it shall be as binding upon both parties as an award by the commissioner. . . ."

[6] "Maximum medical improvement is that time when there is no reasonable prognosis for complete or partial cure and no improvement in the physical condition or appearance of the injured body member can be reasonably made." *Cappellino* v. *Cheshire*, 27 Conn. App. 699, 703 n.2, 608 A.2d 1185 (1992), aff'd, 226 Conn. 569, 628 A.2d 595 (1993).

[7] An employee who objects to a form 36 may request an informal hearing. See General Statutes § 31-296 (b); *Passalugo* v. *Guida-Seibert Dairy Co.*, 149 Conn. App. 478, 486, 91 A.3d 475 (2014). "While evidence is not taken at an informal hearing . . . the employer/insurer has the burden of proof and must submit documents . . . in support of the discontinuance or reduction. Thereafter, the burden shifts to the injured worker who should be prepared to present competent medical evidence (usually by medical reports) that support the contest of the [f]orm 36. The [commissioner] will

weigh the evidence and either approve or disallow the discontinuance or reduction. . . . [A] commissioner's initial ruling on a [f]orm 36 may be challenged at a subsequent formal [evidentiary] hearing, at which the previous ruling has no precedential weight. The issue is tried de novo." (Citation omitted; emphasis omitted; internal quotation marks omitted.) *Passalugo* v. *Guida-Seibert Dairy Co.*, supra, 486–87.

[8] General Statutes § 31-307 (a) provides in relevant part: "If any injury for which compensation is provided under the provisions of this chapter results in total incapacity to work, the injured employee shall be paid a weekly compensation equal to seventy-five per cent of the injured employee's average weekly earnings as of the date of the injury . . . ."

[9] See General Statutes § 31-294f (a), which provides: "An injured employee shall submit himself to examination by a reputable practicing physician or surgeon, at any time while claiming or receiving compensation, upon the reasonable request of the employer or at the direction of the commissioner. The examination shall be performed to determine the nature of the injury and the incapacity resulting from the injury. The physician or surgeon shall be selected by the employer from an approved list of physicians and surgeons prepared by the chairman of the Workers' Compensation Commission and shall be paid by the employer. At any examination requested by the employer or directed by the commissioner under this section, the injured employee shall be allowed to have in attendance any reputable practicing physician or surgeon that the employee obtains and pays for himself. The employee shall submit to all other physical examinations as required by this chapter. The refusal of an injured employee to submit himself to a reasonable examination under this section shall suspend his right to compensation during such refusal."

[10] The record contained additional medical evidence, which the commissioner summarized in her decision. We need not detail that additional evidence for purposes of this appeal.

[11] General Statutes § 31-294d (a) (1) provides in relevant part: "The employer, as soon as the employer has knowledge of an injury, shall provide a competent physician, surgeon or advanced practice registered nurse to attend the injured employee and, in addition, shall furnish any medical and surgical aid or hospital and nursing service, including medical rehabilitation services and prescription drugs, as the physician, or advanced practice registered nurse surgeon deems reasonable or necessary. . . ."

We note that § 31-294d (a) (1) was amended by No. 21-196, § 56, of the 2021 Public Acts by adding references to physician assistants and making a technical change. That amendment has no bearing on the merits of this appeal. For purposes of clarity, we refer to the current revision of the statute.

[12] More specifically, the board vacated the commissioner's conclusions set forth in paragraphs G, H, and I of her decision approving the form 36.

[13] The board also determined that the opinion of Belkin, the defendants' medical examiner, did not salvage the commissioner's ruling because (1) Belkin testified at his deposition that he did not " 'unequivocally agree' " that the plaintiff's comorbidities and medications necessarily precluded " 'any form of work status' " for the plaintiff and, in any event, (2) the commissioner did not assess Belkin's credibility and persuasiveness in relation to the other examiners.

[14] More specifically, the board vacated the commissioner's conclusions set forth in paragraphs D, E, and F of her decision approving the form 36.

[15] During oral argument before this court, the parties' respective counsel made comments suggesting that none of the parties believed that it was necessary to pursue the issue of further medical care on remand.

[16] The Workers' Compensation Act, General Statutes § 31-275 et seq., contained in chapter 568 of the General Statutes, has no provision that parallels § 51-183c.

[17] General Statutes § 31-301 (c) provides in relevant part: "Upon the final determination of the appeal by the [board], but no later than one year after the date the appeal petition was filed, the [board] shall issue its decision, affirming, modifying or reversing the decision of the commissioner. . . ."

[18] In denying the plaintiff's motion for articulation or reconsideration, the board cited *Goulbourne* v. *Dept. of Correction*, No. 5461, CRB 1-09-5 (May 12, 2010), as an example of a case in which it had remanded a matter to the original commissioner with direction to rule on the basis of the appropriate legal standard. The plaintiff claims that the board's reliance on *Goulbourne* to support the remand ordered in this case was misplaced. Whether the board properly relied on *Goulbourne* does not affect the outcome of this appeal. Accordingly, we need not address this issue further.

[19] In his principal appellate brief, the plaintiff also asserts that the board's remand order contravened § 31-301 (c). See footnote 17 of this opinion. This assertion is unavailing. The board acted in accordance with § 31-301 (c) by affirming in part and reversing in part the commissioner's decision approving the form 36 with an accompanying remand order. Nothing in § 31-301 (c) precluded the board from remanding the matter to the commissioner for further proceedings on the relevant issues.

Additionally, in his principal appellate brief, the plaintiff cites § 31-301 (e) and Practice Book § 60-5 for the proposition "that reversals by the [board] must . . . conform to the same laws as those from the Supreme Court, where applicable." General Statutes § 31-301 (e) provides in relevant part that "[t]he procedure in appealing from an award of the commissioner shall be the same as the procedure employed in an appeal from the Superior Court to the Supreme Court, where applicable. . . ." Practice Book § 60-5, applicable to workers' compensation appeals pursuant to Practice Book § 76-1, provides in relevant part that "[t]he court may reverse or modify the decision of the trial court if it determines that the factual findings are clearly erroneous in view of the evidence and pleadings in the whole record, or that the decision is otherwise erroneous in law. . . ." We do not construe these provisions as supporting the plaintiff's claim that the board committed error in remanding the matter to the commissioner.